## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL AARON FINKIN,** | : | **Civil No. 4:24-CV-02180** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO**, | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

While Social Security appeals are judged against a deferential substantive standard of review, case law imposes a clear obligation upon Administrative Law Judges (ALJs) to fully articulate their rationale when denying benefits to disability applicants. This duty of articulation is essential to informed judicial review of agency decision-making since, in the absence of a well-articulated rationale for an ALJ's decision, it is impossible to ascertain whether substantial evidence supported that decision. At a minimum, this duty of articulation requires the ALJ to draw a legal and logical bridge between any factual findings and the final conclusion denying the disability claim. This duty of articulation applies with equal force to an ALJ's evaluation of a claimant's subjective symptoms. On this score:

1

> Where a subjective impairment could reasonably be caused by a
> claimant's medical condition, the ALJ must evaluate the intensity and
> persistence of the symptom and its potential work-preclusive effects. If
> she wishes to reject a claimant's subjective complaints, the ALJ must
> then point to contradictory evidence from the medical record and
> sufficiently explain her rationale.

Uncapher v. Colvin, No. 02:13-CV-00886, 2014 WL 1316132, at *8 (W.D. Pa. Apr.

1, 2014) (citing Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999); Williams v.

Sullivan, 970 F.2d 1178, 1184–85 (3d Cir.1992); Burnett v. Comm'r of Soc. Sec.

Admin., 220 F.3d 112, 119 (3d Cir. 2000)) (internal citations omitted).

The instant case illustrates the importance of this logical bridge, providing "a

clear and satisfactory explication," Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.

1981), of the basis for not providing limitations based upon a claimant's subjective

complaints. In this case, the plaintiff testified that the primary reason he was unable

to work was significant fatigue that caused him to fall asleep at his desk at his last

job. (Tr. 44-45). While the medical record in this case is relatively meager, objective

evidence supports the plaintiff's testimony that he experienced "crushing fatigue,"

(Tr. 366), and that, "[s]ometimes will need to stop driving and take a nap." (Tr. 316).

While the ALJ acknowledged the plaintiff's subjective complaints of fatigue were

the primary reason he left his employment, he included no limitations in the RFC

relating to this symptom and did not explain why his statements about fatigue were

not credited despite the clear objective medical evidence supporting his statements.

2

Upon consideration, we find that the ALJ failed to adequately account for the plaintiff's fatigue and provided no explanation for the omission of any off-task time relating to his need to rest in the RFC, a factor which undeniably affects Finkin's ability to work on a sustained basis. Thus, in the instant case we conclude that the ALJ's burden of articulation has not been met. Accordingly, we will remand this case for further consideration and evaluation by the Commissioner.

## II.     Statement of Facts and of the Case

### A. Introduction

On March 29, 2022, the plaintiff, Nathaniel Finkin, filed a Title II application for a period of disability and disability insurance benefits with the Social Security Administration alleging an onset of disability beginning April 2, 2021. (Tr. 23). In this application the plaintiff indicated that he was disabled due to diabetes, a medical condition which caused fatigue. (Tr. 57). The plaintiff was born in October of 1972 and was 48 years old on the alleged onset date. (Id.) During the disability proceedings, he transitioned age categories to an individual closely approaching advanced age at the time his application was being adjudicated. (Id.) He has a high school education and previously worked as a front desk supervisor/manager and insurance agent. (Tr. 34).

## B. <u>The Medical Evidence of The Plaintiff's Diabetes-Related Fatigue</u>

The plaintiff alleged he was disabled due to his diabetes, but the ALJ also concluded the plaintiff's degenerative disc disease and obesity were severe impairments. Indeed, with regard to the foundational issue in this case, whether the ALJ properly evaluated his symptoms of fatigue, the plaintiff attributed his symptoms to his uncontrolled diabetes which led to frequent blood sugar spikes.[1] The medical record, while meager, indicates that Finkin was diagnosed with type 2 diabetes in October 2019 through routine labs at his primary care doctor. (Tr. 273).

On the alleged onset date, in April 2021, he reported to his primary care doctor that he was experiencing weight gain, higher blood pressure, and was having issues with RLS getting worse but also stated he was "working a lot." (Tr. 315). However, it was around that time that the plaintiff testified he had to leave his job as a front desk supervisor because he was unable to complete a workday due to his fatigue, including falling asleep at his desk, and frequent urination. (Tr. 44-45).

In July 2021, Finkin was taken via EMS to the emergency department for an episode of syncope. (Tr. 350). He was diagnosed with low blood pressure, dehydration, syncope, and arrhythmia. (Tr. 352). He was discharged and told to stay

---

[1] There was also evidence that his fatigue was attributed to his restless leg syndrome (RLS) causing insomnia. (Tr. 316, 341, 342).

hydrated. (Tr 353). In August 2021 he reported having a hard time getting his sugars down and it was noted that "high sugars have progressed rapidly." (Tr. 315-16). (Tr. 316). He was also referred to neurology in August 2021 for RLS where he reported a sudden onset of symptoms in October 2019, around the same time he was diagnosed with type 2 diabetes, (Tr. 273), and stated that he has had improvement since starting on medication but "continues to endorse further titration of the medication and further worsening of symptoms" which he described as "pure misery" if he misses his medication. (Tr. 341). Gabapentin was started and he was advised to avoid sleep deprivation, reduce caffeine, increase exercise, and hydrate. (Tr. 342). In December 2021, his blood sugars were better, but he stated "he is having significant fatigue recently. Sometimes will need to stop driving and take a nap. On the road with his job long hours.[2] Not sleeping very well." (Tr. 319).

Throughout 2022 and 2023, while examinations frequently showed he appeared healthy and well developed (Tr. 316, 319, 326, 329, 332, 366),[3] he

---

[2] The plaintiff testified that, after he had to leave his job as the hotel, he attempted to do work which required him to visit stores that were assigned to him and "complete basic tasks." (Tr. 45). The plaintiff testified that he was unable to sustain this work because he would have to stop to sleep or void his bladder, so he lost his assignments. (Id.)

[3] The plaintiff also underwent a consultative examination on January 17, 2023, which did not note anything specific about his fatigue and was equivocal with regard to his postural limitations, showing a slightly impaired gait, decreased ability to squat, but normal strength in all extremities, except 4/5 in the right lower extremity.

repeatedly reported issues with fatigue to his primary care physician. In April 2022 he again reported feeling more fatigued and having more RLS symptoms. (Tr. 316). By August 2022, his treatment notes stated he was "bothered by crushing fatigue." (Tr. 366). Again, in December 2022, he stated he was still very fatigued and his sugars were still running high despite medication. (Tr. 423). He again reported fatigue, thirst, and frequent urination in April 2023. (Id.)

In sum, while the longitudinal medical evidence is not particularly comprehensive, it is clear that the plaintiff regularly complained of fatigue that he at times described as "crushing" and expressed a need to nap while driving and working.

### C. **The Plaintiff's Testimony Regarding His Fatigue**

It was against this clinical backdrop that an ALJ conducted a hearing regarding the plaintiff's disability application on December 18, 2023. (Tr. 39-50). The plaintiff and a vocational expert both appeared and testified at this hearing. (Id.) Like the medical record in this case, the hearing was relatively brief. However, the first question asked by the ALJ at the hearing was:

> Q. Nathaniel, could you describe for us in your own words what prevents you from being able to work full-time?

---

(Tr. 371-74). Since we find this case warrants remand for other reasons, we do not reach the plaintiff's argument that the ALJ did not properly evaluate the opinion of the consultative examiner.

A. So the Type 2 diabetes that I've been diagnosed with and suffering with for years has led to increasing levels of fatigue, and increasing level of need to void my bladder and urinate. And I cannot work more than an hour at a time, that I'm having to rest, or having to take bathroom breaks. And so, at my most recent employment, which was my last employment, I was separated because I could not complete the shifts that I was assigned. I'd have to take breaks. I was falling asleep, or I had to use the restroom so frequently that I was unable to perform the basic duties that were assigned.

And since that happened in 2021, my symptoms have only worsened, so I cannot do anything more than an hour or two, without having to take a substantial break and rest, often needing to sleep. And I have to void my bladder a minimum of two times per hour, on account of my very high blood sugar. And so, those two conditions make securing or completing work an obstacle.

(Tr. 42-43). Thus, in response to the pivotal question in this case, the plaintiff testified that fatigue and frequent urination were the two most significant symptoms which precluded him from working full-time. The plaintiff went on to testify that he had to separate from his last employer, the Simmons Motel and Suites, due to fatigue, falling asleep at his desk, and frequent urination. He then tried to pick up work but was unable to perform it for the same reasons. (Tr. 44-45). He stated that he spends the majority of his day laying down, needing to lay down every hour or two, (Tr. 46), and that he naps three to four times a day anywhere from thirty to ninety minutes at a time. (Tr. 44-45).

A vocational expert (VE) also testified at the hearing. The VE confirmed that severe and chronic fatigue would be work preclusive and testified that there would be no jobs that an individual with Finkin's RFC but who would be absent two days a month and off task 15 percent of the workday could perform and maintain. (Tr. 49).

Finkin also reiterated his statements regarding his fatigue in a function report he submitted in October 2022. The plaintiff explained how his illnesses, injuries, or conditions limited his ability to work, stating, "[m]y intense fatigue renders me incapable of performing any task longer than 45 minutes." (Tr. 230).

Finally, Finkin's former employer, Sterl Simmons, General Manager of the Simmons Motel and Suites, also corroborated the plaintiff's statements about the work-preclusive effect of his chronic fatigue. In a third-party opinion regarding Finkin's ability to perform work-related activity, Simmons confirmed that:

> Beginning in the Winter of 2020-2021, Nathaniel began to complain of fatigue and the need to take frequent bathroom breaks . . . by June 2021, Nathaniel was literally falling asleep at the front desk, and could not work a basic 6-hour shift. He was also taking 1-2 restroom breaks per hour, leaving the front desk unattended. After repeated conversations, it became clear that his medical conditions left him incapable of working for us any longer. . . . In my professional opinion as a man in business for nearly 50 years, he is not physically capable of working. His fatigue and restroom needs preclude him from any kind of work I could offer . . .

(Tr. 264). Thus, while not a medical opinion, the opinion of Finkin's former employer was that his fatigue and restroom needs, causing him to be off-task every hour, were the primary reasons he was unable to fulfill his duties as an employee.

### D. ALJ Hearing and Decision

Following this hearing, the ALJ issued a decision denying the plaintiff's disability application on February 8, 2024. (Tr. 20-38). In that decision, the ALJ first concluded that the plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026, and had not engaged in substantial gainful activity since April 2, 2021, the alleged onset date. (Tr. 25). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that the plaintiff suffered from the following severe impairments: degenerative disc disease, diabetes, and obesity. (Id.)  At Step 3 the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 28-29).

The ALJ then fashioned the following RFC for the plaintiff:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). He is limited to frequent use of ramps, stairs, frequent balancing, stooping, and crouching and occasional use of ladders, ropes, and scaffolds, and occasional kneeling and crawling. He must avoid concentrated exposure to extreme cold, humidity, dangerous machinery, and unprotected heights.

9

(Tr. 29).

Notably, this RFC made no accommodations for the plaintiff's fatigue, for example in providing for off-task time to rest during the day, despite the plaintiff testifying that was the main reason he could not maintain full-time employment. Moreover, the ALJ did not explain why he did not credit the plaintiff's statements about his need to rest and nap despite repeated notes in the medical record corroborating his statements.

In omitting any accommodations for the plaintiff's fatigue, the ALJ found that, although the plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence. (Tr. 29-31). The ALJ first acknowledge the plaintiff's statements regarding the limiting effects of his fatigue, summarizing:

> The claimant has alleged disability due to diabetes (Exhibit 3E). The claimant has also alleged in his function reports that he has difficulty lifting, squatting, bending, walking, kneeling, standing, sitting, climbing stairs, completing tasks, concentrating, following instructions, and using his hands; he is only able to stand for a very short time (under five minutes); and he is only able to walk one-fourth of a mile before needing to rest for ten to fifteen minutes or twenty to thirty minutes (Exhibit 6E and 10E).
>
> The claimant testified that he experiences a blood sugar level that ranges between one hundred seventy and two hundred twenty. He

experiences spikes in his blood sugar level two to three times a week and he had a blood sugar level of three-hundred eighty during his last spike. When his blood sugar level is too high, he experiences fatigue, frequent urination, lightheadedness, and blurred vision and he has to lay down. He experiences spikes in his blood sugar level for two to three hours but the last time that he experienced a spike in his blood sugar level he was incapacitated for thirty-six hours.

The claimant also testified he is not able to work on a full-time basis because his diabetes led to increased fatigue and increased frequency of urination and he cannot work more than an hour without having to rest or use the restroom. He and his last employer mutually agreed to him leaving his last job as he could not complete work shifts, he would fall asleep, and had to use the restroom so frequently he could not complete his job duties. He has tried to do other jobs but he was not able to remain on task at the jobs due to his ailments. Since 2021, his symptoms have worsened such that he cannot do anything for more than an hour or two without needing a substantial break and rest and often needing to sleep and he needs to use a bathroom a minimum of two times per hour.

The claimant further testified that standing for long periods of time is uncomfortable and impossible for him to do and he is only able to stand for fifteen minutes at one time. He is not able to sit for long periods of time such that he is only able to sit for one hour at one time. He takes three to four naps a day for thirty to ninety minutes, he will lay down every one or two hours during the day, and very often he will spends the majority of the day laying down. He is not able to do many chores at one time and he has to break up chores.

(Tr. 30). Thus, the ALJ clearly acknowledged the plaintiff's testimony that he left his prior employment due to increased fatigue and frequent urination and that he could not remain on task at his jobs due to these impairments. Nonetheless, in finding these statements by the plaintiff inconsistent with the medical evidence, the ALJ did

11

not acknowledge the repeated notes in his record of Finkin's "crushing fatigue" or explain why his statements about his need to rest were not credited. Instead, the ALJ's summary of the longitudinal record focused on clinical examination findings of normal strength, intact sensation, normal gait, and notes that he was in no acute distress and appeared healthy. (Tr. 31). The ALJ also found a State agency medical consultant opinion from January 25, 2023 that Finkin could perform light work, but that also did not account for his fatigue and need to rest during the day, persuasive. (Tr. 33). Conversely, the ALJ rejected the third-party statement of the plaintiff's former employer, Sterl Simmons, as inconsistent with the plaintiff's medical records, again citing to the same examination findings of normal strength, gait, muscle tone, and notes that he seemed healthy and was in no acute distress; findings which are, in our view, unrelated to the plaintiff's complaints of extreme fatigue. Moreover, in reaching this conclusion the ALJ failed to address the fact that Finkin's treatment notes contained references to his crushing fatigue, clinical records which corroborated Mr. Simmons' third party report.

Thus, the ALJ's summary of the medical evidence, and explanation for why the plaintiff's own statements, as corroborated by his former employer, regarding his extreme fatigue were not credited, did not address the evidence in the record that Finkin repeatedly complained of fatigue but instead focused on unrelated

examination findings relating to his strength, gait, and overall appearance. Also, notably, while the decision did reconcile the ALJ's decision not to include any off-task time for Finkin's frequent urination stating, "the claimant's medical records also do not indicate the claimant persistently reported experiencing a symptom of frequent urination subsequent to his alleged onset date of disability," (Tr. 31), the ALJ's summary did not reconcile the previously referenced medical records showing ongoing reports of significant fatigue with the decision not to include any off-task time in the RFC.

This appeal followed. (Doc. 1). On appeal, the plaintiff argues, *inter alia,* that the ALJ failed to address Finkin's need to rest/lie down during the day. Upon consideration, we find that the ALJ's failure to address or account for the unequivocal, consistent medical evidence of the plaintiff's fatigue in the RFC was error. Therefore, we will remand this case for further consideration and evaluation of the evidence.

## III. <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the

record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency

14

factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be

set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also</u> <u>Metzger v. Berryhill</u>, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical

19

opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In

this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

21

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's subjective symptoms. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide

22

"specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of symptoms under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of

23

a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally

limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations

and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

## D.    **This Case Will Be Remanded.**

In our view, more is needed here by the ALJ to account for the rejection of the plaintiff's clear, unequivocal statements, supported by the medical record and third party reports, that chronic fatigue related to his diabetes limits his ability to perform work-related activity. Indeed, the ALJ's complete omission of any discussion regarding off-task time or absenteeism related to the plaintiff's fatigue deprives the Court of meaningful review, since we are without answers as to the ALJ's reasoning for not including any off-task time in the RFC assessment despite this undisputed evidence.

As previously noted, courts are generally confined to the credibility determinations of an ALJ with regard to a claimant's alleged symptoms. Indeed, while "statements of the individual concerning his or her symptoms must be

carefully considered, the ALJ is not required to credit them." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 363 (3d. Cir. 2011). And it is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." <u>Hantraft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). However, the regulations also impose a duty of articulation upon the ALJ to "specifically identif[y] and explain[] what evidence he found not credible and why he found it not credible." <u>Brooks v. Kijakazi</u>, No. CV 21-1312, 2021 WL 5997983, at *2 (E.D. Pa. Dec. 20, 2021) (quoting <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014)).  Indeed, "[a]n ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony." <u>McKean v. Colvin</u>, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citing Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999)).

With respect to a plaintiff's statements about fatigue, other courts in this circuit have remanded on this issue where, "[i]n [the] decision, although the ALJ acknowledged Plaintiff's testimony complaining of fatigue . . . the ALJ did not specifically reject the complaints, nor did [he] acknowledge the many notations of such complaints in the medical records." <u>Brooks</u>, 2021 WL 5997983, at *2. <u>See also</u> <u>Kanary v. Berryhill</u>, No. CV 17-1027, 2018 WL 4620696, at *4 (W.D. Pa. Sept. 26,

27

2018) (remanding where the plaintiff identified fatigue as one of the primary reasons she believed she could not work a full-time job but the ALJ failed to conducted a focused discussion of medical opinions pertaining to fatigue); Uncapher v. Colvin, No. 02:13-CV-00886, 2014 WL 1316132, at *8 (W.D. Pa. Apr. 1, 2014) (citing Williams v. Sullivan, 970 F.2d 1178, 1184-85 (3d Cir. 1992); Burnett, 220 F.3d at 119-20) ("If [the ALJ] wishes to reject a claimant's subjective complaints [of fatigue], the ALJ must then point to contradictory evidence from the medical record and sufficiently explain [his] rationale.")

Similarly, here, the duty of articulation is not met since the ALJ has failed to specifically explain why the plaintiff's statements regarding the work-preclusive effects of his fatigue were not credited. At the outset, the issue of the plaintiff's fatigue was a lynchpin of this disability claim. The plaintiff stated clearly and unequivocally that the primary reason he is unable to maintain full-time employment was because of his consistent fatigue that makes him unable to work for more than one hour at a time before needing to rest. His statements were corroborated by his former employer, who stated that Finkin's fatigue and restroom needs, causing him to be off-task every hour, were the primary reasons he was unable to fulfill his duties as an employee.

Moreover, Finkin's statements regarding the limiting effects of the fatigue caused by his diabetes are supported by the objective medical evidence, which was wholly ignored by the ALJ, showing repeated reports of significant fatigue affecting his ability to function throughout the relevant period. For example, in December 2021, he stated "he is having significant fatigue recently. Sometimes will need to stop driving and take a nap. On the road with his job long hours. Not sleeping very well." (Tr. 319). In April 2022 he again reported feeling more fatigued and having more RLS symptoms. (Tr. 316). By August 2022, his treatment notes stated he was "bothered by crushing fatigue." (Tr. 366). Again, in December 2022, he stated he was still very fatigued and his sugars were still running high despite medication. (Tr. 423). He again reported fatigue, thirst, and frequent urination in April 2023. (Id.)

Despite this clear objective evidence supporting the plaintiff's reportedly primary work-preclusive symptom, the ALJ included no limitations in the RFC addressing off-task time or absenteeism resulting from the plaintiff's fatigue. Significantly, this decision is wholly unexplained in the ALJ's opinion. In fact, the ALJ's analysis focuses only on unrelated examination findings regarding the plaintiff's strength and postural abilities but makes no mention of his repeated reports of fatigue and does not explain why his statements regarding his fatigue were not credited. On this record, the ALJ simply has not created a logical bridge between

29

the evidence summarized in the decision and the limitations in the RFC which are completely devoid of any accommodation for these symptoms. This was error.

Moreover, this error is not harmless where the vocational expert testified that no jobs existed that could accommodate an employee being off-task more than fifteen percent of the workday and absent more than more than one-half a day to one day per month not to exceed eight to ten days in a year. (Tr. 49).

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here. On the current record, it seems that the ALJ considered the plaintiff's statements about the limiting effects of his fatigue, but arrived at an RFC which included no off-task time for such limitations and did not adequately explain what contradictory evidence led to this conclusion.

Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment

of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ <i>Martin C. Carlson</i>
Martin C. Carlson
United States Magistrate Judge

Dated: December 18, 2025